T.C. Summary Opinion 2004-42


UNITED STATES TAX COURT



DONALD TOBKIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6646-00S.               Filed April 5, 2004.



Donald Tobkin, pro se.

<u>Ross M. Greenberg</u>, for respondent.



COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered

---

    [1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $15,111 in petitioner's Federal income tax and an addition to tax under section 6651(a)(1) of $8,777.50 for 1995. After concessions noted hereafter, the issues for decision are: (1) Whether petitioner, under section 215(a), is entitled to an alimony deduction in excess of amounts allowed by respondent, and (2) whether petitioner is liable for the addition to tax under section 6651(a)(1) for the late filing of his 1995 Federal income tax return.[2]

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was Broward County, Florida.

On his Federal income tax return for 1995, petitioner claimed a deduction of $60,000 for alimony paid to his former spouse, Jane Seyler. In the notice of deficiency, respondent disallowed $38,777 of the claimed amount, thus allowing a $21,223

---

[2] Petitioner's 1995 Federal income tax return was a joint return with his then spouse, Marilyn Byrd. The notice of deficiency is addressed jointly to petitioner and Marilyn Byrd Tobkin. The petition was initially filed as a joint petition by petitioner and Marilyn Byrd Tobkin; however, the case was dismissed for lack of jurisdiction as to Marilyn Byrd Tobkin on the ground that the petition was not filed on her behalf by a person authorized to do so.

alimony deduction. At trial, respondent conceded petitioner's entitlement to an additional alimony deduction of $10,175. With the concession, petitioner was allowed a total alimony deduction of $31,398, leaving at issue petitioner's claim to an additional alimony deduction of $28,602.

Petitioner is a medical doctor and a lawyer. He received his medical degree from Wayne State University School of Medicine. He began a medical practice in Broward County, Florida, in 1977. Later, he attended evening classes at the University of Miami School of Law and received a law degree in 1985. At the time of trial, petitioner was engaged as a medical malpractice attorney. His practice was plaintiff oriented, with most cases taken on a contingency fee basis.

Petitioner married Jane Seyler on January 11, 1977. Throughout his marriage to Ms. Seyler and thereafter, petitioner experienced depression. The marriage was troubled, and Ms. Seyler eventually petitioned for divorce. A final judgment of Dissolution of Marriage between the two was entered on May 26, 1993 (final judgment).[3]

The final judgment provided that petitioner pay Ms. Seyler permanent periodic alimony of $2,000 per month. The final

---

[3] Petitioner married Marilyn Byrd Tobkin on May 27, 1993, and was involved in divorce proceedings with her at the time of trial.

judgment also provided that the alimony obligation would terminate upon the death of petitioner or the death or remarriage of Ms. Seyler. The final judgment confirmed an earlier order dated April 29, 1993, that petitioner pay Ms. Seyler's "temporary attorney's fees", suit monies, and costs in the amount of $32,700.[4] The final judgment further provided that petitioner "shall, as an incidence of support to the Wife, pay her attorney's fees, suit monies and costs. The Court specifically reserves jurisdiction for the purpose of determining the amount of the fees, suit monies, and costs."

Petitioner filed for bankruptcy protection on September 9, 1993. Ms. Seyler thereafter filed a petition in State court seeking a determination as to the dischargeability of petitioner's obligations arising under the final judgment.[5] By order dated February 26, 1996, the State court approved a stipulation of settlement that provided $18,000 of Ms. Seyler's

---

[4] Of this $32,700 total, $29,250 was attorney's fees, $3,000 was for accountant's fees, and $450 was for an expert witness fee.

[5] Under 11 U.S.C. sec. 523(a)(5) (2000), a debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement" is nondischargeable in bankruptcy, and the appropriate State court and the bankruptcy court have concurrent jurisdiction to determine the dischargeability of such obligations.

$25,300 claim was nondischargeable, and the remainder was dischargeable. Petitioner received a discharge in bankruptcy on March 12, 1996. The final decree closing petitioner's bankruptcy case was entered on August 12, 1999.

In 1995, pursuant to his obligations under the final judgment, petitioner paid $31,398 to Ms. Seyler. These payments included $17,223 made through Broward County officials, $4,000 paid directly to Ms. Seyler, and $10,175 made through the bankruptcy trustee. As noted earlier, respondent concedes that these payments were alimony and that petitioner was entitled to a $31,398 deduction for alimony paid. Also in 1995, petitioner paid $28,825 through the bankruptcy trustee to Ms. Seyler's attorney for her legal fees incurred in connection with the divorce proceedings. Petitioner contends that these payments constitute alimony, and it is these payments that the Court addresses.

Petitioner did not file his 1995 Federal income tax return timely. He had an accountant who reminded him that the return was due on April 15, 1996. Petitioner applied for and received an automatic extension to file until August 15, 1996. However, petitioner and his then wife, Marilyn Byrd, did not file their joint 1995 Federal income tax return by the extended deadline. Their return was received by the Internal Revenue Service on August 27, 1997.

The first issue is whether petitioner is entitled to an alimony deduction in excess of the amounts allowed by respondent. The facts as to this issue are not in dispute; the issue is one of law.  Therefore, with respect to the burden of proof, the Court need not address the applicability of section 7491.  Higbee v. Commissioner, 116 T.C. 438 (2001).

Section 71(a) provides generally that alimony payments are included in the gross income of the payee spouse, and section 215(a) provides generally that alimony payments are deductible by the payor spouse.  Section 215(b) provides in pertinent part that the term "alimony" means any alimony, as defined in section 71(b), which is includable in the gross income of the recipient under section 71.  Section 71(b) defines alimony as follows:

> SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> > (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> >
> > (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> >
> > (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment(in cash or property) as a substitute for such payments after the death of the payee spouse.

Thus, for our purposes here, if the divorce or separation instrument provides that the payment by one spouse to or on behalf of the other spouse is not includable in the gross income of the receiving spouse and is not allowable as a deduction to the payor spouse, the payments do not constitute deductible alimony. Sec. 71(b)(1)(B). However, if the obligation of the payor to make the payments terminates upon the death of the payee spouse, and there is no obligation on the payor spouse to make any substitute payments to the payee's estate, the payments by the payor spouse would constitute alimony, and such payments would be deductible under section 71(b)(1)(D). Respondent contends that petitioner's payment of Ms. Seyler's attorney's fees of $28,825 is not deductible under section 71(b)(1)(B) and (D).

Section 71(b)(1)(B) thus requires that the divorce or separation instrument between petitioner and Ms. Seyler not designate petitioner's payment of Ms. Seyler's attorney's fees as a payment that was not includable in gross income and not allowable as a deduction under section 215. Burkes v. Commissioner, T.C. Memo. 1998-61. In arguing that section

71(b)(1)(B) was not satisfied, respondent relies on paragraph 8 of the findings in the final judgment, which states:

> In accordance with this Court's Order on Wife's Motion for Clarification of Order on Temporary Support, the determination of taxability of all payments made to the Wife or made on behalf of the Wife was deferred until final hearing. The Court hereby determines that all payments made to the Wife in accordance with this Court's Temporary Support Order is [sic] designated as non-taxable to her and non-deductible by the Husband in accordance with Internal Revenue Code Section 71(b)(1)(B).

The temporary support order referred to is dated June 22, 1992, and orders petitioner to pay $2,000 per month to his spouse; however, the order makes no provision for nor imposes liability on petitioner for payment of attorney's fees. Thus, respondent's reliance on the final judgment is misplaced. Neither the paragraph respondent cites nor any other aspect of the final judgment designates petitioner's payment of Ms. Seyler's attorney's fees as a payment that is not includable in gross income and not allowable as a deduction under section 215. Thus, this provision of the final judgment does not support respondent's contention.

In order for petitioner's payment to be deductible as alimony, petitioner's obligation to pay Ms. Seyler's attorney's fees would have had to terminate in the event of her death. Sec. 71(b)(1)(D). This requirement may be met either by the terms of the divorce decree or by operation of State law. Commissioner v.

Estate of Bosch, 387 U.S. 456, 465 (1967); Cunningham v. Commissioner, T.C. Memo. 1994-474.  In this case, order No. 16 in the final judgment stated:  "The Husband, shall, as an incidence of support to the Wife, pay her attorney's fees, suit monies and costs.  The Court specifically reserves jurisdiction for the purpose of determining the amount of the fees, suit monies and costs."  While this provision of the final decree does not expressly state that the obligation survives the death of Ms. Seyler, it does contemplate continuing jurisdiction by the court on the matter.

Additionally, under Florida law, petitioner's obligation to pay the attorney's fees of Ms. Seyler would have continued after her death.  In Canakaris v. Canakaris, 382 So. 2d 1197, 1201 (Fla. 1980), the Florida Supreme Court stated:

> Although the award of lump sum alimony is not dependent upon a finding of a prior vested right, there does arise upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification.  It may consist of real or personal property, or may be a monetary award payable in installments.  Jurisdiction may be expressly retained, however, to terminate lump sum alimony installment payments upon a spouse's remarriage or death when the parties agree to such a provision in a property settlement agreement.  Further, jurisdiction may be retained to enter periodic alimony if found necessary after such termination of lump sum alimony installment payments. * * *

The Court has noted that the majority of State courts, including those of Florida, have concluded that an award of attorney's fees

remains viable and enforceable notwithstanding the death of one spouse before entry of a final divorce decree. Berry v. Commissioner, T.C. Memo. 2000-373 (citing Hirsch v. Hirsch, 519 So. 2d 1056 (Fla. Dist. Ct. App. 1988)), affd. 36 Fed. Appx. 400 (10th Cir. 2002). Pursuant to Florida domestic relations law, a trial court in Florida can retain jurisdiction to dispose of a claim for attorney's fees. Fla. Stat. Ann. sec. 61.16 (West 1997). Florida courts have affirmed the policy that obligations to pay attorney's fees of a former spouse stemming from the divorce should survive the death of the payee. Faust v. Faust, 553 So. 2d 1275 (Fla. Dist. Ct. App. 1989) (the purpose of Fla. Stat. Ann. sec. 61.16 is to ensure that both parties to the dissolution action had similar ability to secure competent legal counsel); Steinberg, Wohl & Merlin, P.A. v. Leyman, 524 So. 2d 503, 505 (Fla. Ct. App. 1988) ("in the case of attorney's fees the need therefor is not extinguished by a spouse's death; whereas in the case of alimony for the decedent or other such claim, death obviates the necessity therefor"); Hirsch v. Hirsch, supra at 1057 ("There is no logical reason why the wife's untimely demise should relieve the husband of an obligation which as a matter of policy and justice he ought to bear.").

On the basis of Florida law, as well as the policy underlying awards of attorney's fees in divorce actions, the Court concludes that the Supreme Court of Florida would hold that

petitioner would have remained liable for the attorney's fees that the State court awarded to Ms. Seyler even if she had died before entry of a final divorce decree.  Commissioner v. Estate of Bosch, supra; Berry v. Commissioner, supra; Adler v. Adler, 418 So. 2d 1007 (Fla. Dist. Ct. App. 1982).  The requirement of section 71(b)(1)(D) has not been met.  Respondent is sustained on this issue.

The second issue is whether petitioner is liable for the addition to tax under section 6651(a)(1) for failing to file a timely return for the year 1995.  Section 6651(a)(1) provides for an addition to tax if a tax return is not filed timely unless the taxpayer establishes that the failure to file did not result from willful neglect and that the failure to file was due to reasonable cause.  Reasonable cause generally requires a taxpayer to demonstrate that he or she exercised ordinary business care or prudence.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect has been construed to mean a conscious, intentional failure or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245-246 (1985).

Section 7491(c) places the burden of production on the Commissioner in court proceedings with respect to the liability of any individual for any penalty, addition to tax, or additional

amount imposed.[6]  Once the Commissioner meets this initial burden of production to show that the imposition of an addition to tax or penalty is appropriate, the taxpayer bears the burden of proving his failure to file timely the required return did not result from willful neglect and that the failure was due to reasonable cause.  Higbee v. Commissioner, 116 T.C. at 447. Taking the extension into account, the due date for filing petitioner's 1995 tax return was August 15, 1996.  The return was filed August 27, 1997.  On this record, the Court concludes that respondent produced sufficient evidence to show that the section 6651(a)(1) addition to tax is appropriate.

Petitioner cited a variety of reasons for not filing timely, including his belief that he had overpaid his 1995 tax liability through withholdings, reliance on an income tax adviser, chronic depression, and "estoppel, waiver, that sort of thing", stemming from his bankruptcy.  However, the evidence in the record is insufficient to absolve petitioner of liability on the basis of the reasons he cited.  In fact, petitioner was aware of his tax obligations, as evidenced by a timely filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return.  See Radde v. Commissioner, T.C. Memo. 1997-490.  Further, petitioner was mistaken in his belief

---

[6]  Because the examination of petitioner's return commenced after July 22, 1998, sec. 7491 applies.

that he had overpaid through withholdings; his 1995 return showed tax due of $27,982. Finally, he did not establish depression as reasonable cause. See Farley v. Commissioner, T.C. Memo. 1993-31 (depression or emotional illness as a defense to the addition to tax for delinquent filing does not apply unless the taxpayer shows that he was incapable of exercising ordinary business care and prudence during the period). Petitioner has not shown that his failure to file a timely return for 1995 was due to reasonable cause or did not result from willful neglect. Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.